IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JEANA PARKO, DELBERT R. COBINE, and JANICE A. COBINE, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) CIVIL NO. 12-336-GPM ) |
| SHELL OIL COMPANY, EQUILON ENTERPRISES LLC, CONOCOPHILLIPS COMPANY, WRB REFINING LP, CONOCOPHILLIPS WRB PARTNER LLC, and CENOVUS GPCO LLC, | ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

# **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

Plaintiffs, owners of real property in the Village of Roxana, Illinois, allege on their own and on behalf of a putative class, that Defendants, current and former owners and operators of an oil refinery in Roxana, caused or allowed hazardous petroleum by-products to contaminate their property (Doc. 5-2). Plaintiffs claim negligence, trespass, public nuisance, private nuisance, unjust enrichment, and medical monitoring causes of action (Doc. 5-2). Currently pending before the Court is Plaintiffs' motion to certify class and for appointment of class counsel (Docs. 49, 50, 51). Plaintiffs' proposed class definition is as follows:

> All the persons (including non-governmental entities) who own real property in the Village of Roxana, Illinois that includes any portion of any of the parcels on the Village map listed in the table attached hereto as Attachment A.

(Doc. 49). "Attachment A" is a four-page table listing Roxana land parcels by block and lot number, totaling 387 parcels (Doc. 49-1). Defendants oppose certification, arguing Plaintiffs

lack standing, the proposed class is fatally overbroad, and the proposed class fails to satisfy the requirements of Rule 23 (Docs. 65, 66). For the following reasons, Plaintiffs' motion to certify class and for appointment of class counsel is **GRANTED**.

## Standing

Standing is a jurisdictional requirement. *Apex Digital, Inc. v. Sears, Roebuck & Co.,* 572 F.3d 440, 443 (7th Cir. 2009). It is "an indispensable part of the plaintiff's case," not merely a pleading concern. *Id.* A plaintiff must show: "(1) that she has suffered a concrete and particularized injury that is either actual or imminent; (2) that the injury is fairly traceable to the defendant; and (3) that it is likely that a favorable decision will redress that injury." *Milwaukee Police Ass'n v. Board of Fire & Police Com'rs of City of Milwaukee,* 708 F.3d 921, 926 (7th Cir. 2013), *quoting Massachusetts v. EPA,* 594 U.S. 497, 517 (2007). Defendants claim Plaintiffs here fail to show the first two elements (Doc. 66, p. 7). In order to show the requisite "injury in fact," a plaintiff "must establish that he has sustained or is immediately in danger of sustaining some direct injury. Abstract injury is not enough." *Tobin for Governor v. Illinois State Bd. of Elections,* 268 F.3d 517, 528 (7th Cir. 2001), *quoting City of Los Angeles v. Lyons,* 461 U.S. 95, 101 (1983). To establish that the injury is "fairly traceable" to the defendant's acts, a plaintiff must establish a causal connection between the two and show that the injury did not result from some independent act of a third party not before the court. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 (1992). A plaintiff does not, however, necessarily lack standing "merely because the defendant is one of several persons who caused the harm." *Lac Du Flambeau Band of Lake Superior Chippewa Indians v. Norton,* 422 F.3d 490, 500 (7th Cir. 2005).

Defendants argue there is no cognizable injury because the evidence of contamination is based on unreliable data from Plaintiffs' expert Samuel Marquis Doc. 66, p. 7-8). According to

Defendants, Mr. Marquis's model projections indicate that hazardous petroleum by-products are present across Roxana, but an environmental engineering firm hired by Shell, URS Corporation, took samples indicating that the majority of wells in Roxana were not impacted (Doc. 66, p. 14). Essentially, URS Corporation's groundwater reports contradict Mr. Marquis's conclusions, and URS has actually done sampling, so Mr. Marquis's conclusions must be wrong…and without evidence of town-wide contamination there is no actual injury.  Defendants also excerpt named Plaintiffs' Jeana Parko and Janice Cobine who state to the effect:  'the reason I think my property is contaminated is my attorneys told me so,' and 'my property has never been tested for contamination,' respectively (Doc. 66, p. 14-15).  If Plaintiffs don't even know they've been injured, Defendants reason, there cannot be a particularized, concrete injury.

Defendants also argue there is no causation, as Plaintiffs' experts have not ruled out alternative causes of contamination. Peter Zeeb, who produced a hydrogeologic expert report for Defendants (analyzing in part Mr. Marquis's report), opines that there are "other potential sources of petroleum hydrocarbons that could have been released to the environment…located adjacent to the purported class area and/or they are located along groundwater flow lines that would pass through the potential source location and through the purported class area" (Doc. 66-7, pp. 22, 26-28).  The Illinois Emergency Management Agency database and contains at least five incidents that might be alternative causes of hydrocarbon contamination, according to Mr. Zeeb: (1) the release of 140 gallons of unleaded gasoline by the Clark Oil Company caused by a corroded pipe and reported January 23, 1989; (2) the release of an unknown amount of gasoline at TruStreet Properties, which was a self-service station, reported on September 27, 2006; (3) the release of 500 gallons of fuel oil by the Elfgen Land Trust reported on March 8, 1993; (4) the release of an unknown amount of gasoline by Piasa Motor Fuels, a gasoline service station, reported on July 1,

2000; and (5) the release of an unknown amount of gasoline by Piasa Motor Fuels reported July 28, 2000 (Doc. 66-7, p. 26-28). Additionally, a report by Environmental Data Resources Inc. indicates underground 300-gallon-capacity kerosene storage tanks registered with the State Fire Marshall's office exist in the purported class area (Doc. 66-7, p. 28).

Obviously, standing requires an injury. But even if Mr. Marquis's report were entirely inaccurate—that is, if his model projecting that Defendant-released hydrocarbons contaminate the proposed class area were scientifically defunct—there would still be injury to satisfy the injury-in-fact requirement here. Defendants' main challenge to Mr. Marquis's report is the report's supposed conflict with the sample data collected by URS Corporation.[1] URS, of course, collected that data for Shell as part of Shell's effort to comply with the Illinois Environmental Protection Agency's ("IEPA") permit requirements. *See Village of Roxana, Illinois v. Shell Oil Co.,* SDIL Case No. 12-577-GPM, Doc. 38-2. And the IEPA required such data-collection because hazardous material released from the refinery had been detected in the groundwater. *Id.* Defendants are trying to discredit Plaintiffs' expert on the basis that the expert's report conflicts with their own petroleum byproduct dispersion reports. Hazardous oil byproduct from the refinery has unequivocally been released into the proposed class-definite area. And Plaintiffs allege that dispersion has injured them by damaging their properties' value, damaging the use and enjoyment of their properties, giving rise to economic loss, and giving rise to reasonable fears of contracting resultant disease (Doc. 5-2). Plaintiffs have stated concrete, particular, and actual

---

[1] In Plaintiffs' reply to Defendants' opposition to the motion for class certification, they included 'rebuttal expert reports' (Docs. 73, 74, 75). Defendants moved to strike those reports or to re-depose Plaintiffs' experts, as they claimed the rebuttal expert reports were submitted outside the disclosure deadline (Doc. 78). The Court denied that motion, as this Order does not rely on Plaintiffs' experts' rebuttal reports. Additionally, because the challenged expert submissions have expressly not been relied-upon, the Court has not made any *Daubert* conclusions (nor were *Daubert* motions received). *See Messner v. Northshore University HealthSystem,* 669 F.3d 802, 812 (7th Cir. 2012).

injury. Defendants' argument that the named Plaintiffs were not aware of the injury until they were told about the contamination does not negate standing. They are aware now, as they have alleged continuing and present adverse effects of Defendants' alleged misconduct. *See Lujan,* 504 U.S. at 564 and 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice").

By Defendants own categorization, Plaintiff's allegedly standing-deficient injury is a "factual problem" (Doc. 66, p. 14). However, "injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery. The fact that a plaintiff may have difficulty proving damages does not mean that he cannot have been harmed." *Abbott v. Lockheed Martin,* No. 12-3736, 2013 WL 4010226 at *4 (7th Cir. Aug. 7, 2013). The Court will not undertake a full merits review where Plaintiffs have properly alleged injury. "[I]f [plaintiff's] claim has no merit, then he has not been injured by any wrongful conduct of the defendant; but if the consequence were that he lacked standing, then every decision in favor of a defendant would be a decision that the court lacked jurisdiction, entitling the plaintiff to start over in another court." *Bruggeman ex rel. Bruggeman v. Blagojevich,* 324 F.3d 906, 909 (7th Cir. 2003); *see also Abbott v. Lockheed Martin* at *4 ("It is often the case in class litigation that by the time the remedial phase is reached, some of the original plaintiffs will not be entitled to recover, either because they lost on the merits or because they cannot show damages…But in such cases, the plaintiff has lost on the merits; we do not reach back in time and enter a judgment dismissing the case for want of an Article III case or controversy."); *MainStreet Or. Of Realtors v. Calumet City,* 505 F.3d 742, 744 (7th Cir. 2007) ("[S]tanding in the Article III sense does not require a certainty or even a very high probability that the plaintiff is complaining about a real injury, suffered or threatened.").

That other sources of contamination may exist does not destroy standing here. *Lac Du*

*Flambeau Band of Lake Superior Chippewa Indians*, 422 F.3d at 500. It may ultimately be difficult to mete out harm caused by the Defendants' release of chemicals versus harm caused by the other local spills. But Plaintiffs have alleged their harm is traceable to oil byproduct emissions from the refinery from 1918 through the present, and the refinery processes 306,000 barrels of crude oil per day (Doc. 5-2). *See Sierra Club v. Franklin County Power of Illinois, LLC,* 546 F.3d 918, 927 (7th Cir. 2008) ("[W]e don't know if the particulate matter from the plant will blot out the sky or merely create a thin haze that's not visible to the naked eye, or if the airborne mercury will actually spread 45 miles to poison fish that [plaintiff] currently consumes…We do know, however, that the plant will release some pollutants and that [plaintiff] believes these pollutants will ruin her ability to enjoy Rend Lake and taint the surrounding area."). That Plaintiffs may have trouble proving damages does not preclude Article III standing. *Abbott,* 2013 WL 4010226 at *4. Plaintiffs have alleged both injury and causation so to satisfy the standing requirement.

**Definiteness and Ascertainability**

A class must be definite enough to be ascertained. *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006), *citing Alliance to End Repression v. Rochford,* 565 F.2d 975, 977 (7th Cir. 1977). If "the proposed class of plaintiffs is so highly diverse and so difficult to identify that it is not adequately defined or nearly ascertainable…the plaintiff class cannot be maintained." *Adashunas v. Negley,* 626 F.2d 600, 604 (7th Cir. 1980). This 'definiteness' requirement is an implied prerequisite of Rule 23(a). *Rochford,* 565 F.2d at 977. In *Oshana,* the Seventh Circuit found the putative class too indefinite to be certified. 472 F.3d at 514. "Membership in Oshana's proposed class required only the purchase of a fountain Diet Coke from March 12, 1999 forward. Such a class could include millions who were not deceived and thus [had] no

grievance." *Id.* The *Oshana* class was overly broad because "countless members" of the class *could not have been* harmed. *Id.*

That is not the case here. Defendants quibble with Plaintiffs' class definition, as the definition does not require that class members were impacted by alleged contamination and does not reference any geographical zone of pollution (Doc. 66, p. 11). But the class is, by definition, ascertainable—it consists of property owners in Roxana, particularly of 387 discrete parcels of land. Roxana is approximately 6.8 miles in size with a population of only 1,500 people (Doc. 66). 'Roxana property owners' is definite enough. As in *Mejdrech v. Met-Coil Systems Corp.*, "[t]he class members' homes occupy a contiguous area the boundaries of which are known precisely." 319 F.3d 910 (7th Cir. 2003). Further, of those property owners, it is unfathomable that "countless numbers" could not have been harmed (assuming Plaintiffs contentions are true). All the property is in proximity to the alleged byproduct emission. 'Could not have been harmed' is different from 'were not harmed.' It is plausible that all persons who own real property in Roxana suffered injury.

**Rule 23 Analysis**

The proposed class must satisfy the threshold requirements of Federal Rule of Civil Procedure 23(a)—numerosity, typicality, commonality, and adequacy of representation; "as well as one of the three alternatives in Rule 23(b)." *Messner*, 669 F.3d at 811. Here, Plaintiffs proceed under Rule 23(b)(3) which requires that "common questions predominate over any questions affecting only individual members and that class resolution be superior to other available methods for fair and efficient adjudication of the controversy." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 592-93 (1997). Defendants Shell Oil and Equilon Enterprises contend that Plaintiffs' motion for class certification ignores the Supreme Court's recent decision in

*Wal-Mart Stores, Inc. v. Dukes,* which they characterize as a 'drastic' alteration to the analysis a district court must undertake in determining a class's certifiability (Doc. 66, p. 7).  131 S.Ct. 2541.  While *Wal-Mart* is obviously binding, this Court does not see any great sea change in the opinion.  Both before and after *Wal-Mart*, what a plaintiff must do to successfully certify a class is satisfy the requirements of Rule 23.  "It is sufficient if each disputed [Rule 23] requirement has been proven by a preponderance of evidence."  *Messner,* 669 F.3d at 811.  And Plaintiffs have done so here.  As Justice Ginsburg explained in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*:

> Although we have cautioned that a court's class-certification analysis must be "rigorous" and may "entail some overlap with the merits of the plaintiff's underlying claim," Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.  Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.

133 S.Ct. 1184, 1194-95 (2013), *quoting Mal-Mart Stores, Inc. v. Dukes,* 131 S.Ct. at 2551.

### Rule 23(a)(1)—Numerosity

A class action may be maintained only if "the class is so numerous that joinder of all members is impracticable."  FED.R.CIV.P. 23(a)(1).  "[P]laintiffs are not required to specify the exact number of persons in the class, but cannot rely on conclusory allegations that joinder is impractical or on speculation as to the size of the class in order to prove numerosity."  *Marcial v. Coronet Ins. Co.,* 880 F.2d 954, 957 (7th Cir. 1989).

Defendants argue that because many of the property owners caught by Plaintiffs class definition will not have sustained injury, the class is not so large as to preclude joinder (Doc. 65, p. 37; Doc. 66, p. 23).  This argument is a merits argument in disguise.  Plaintiffs propose a class of property owners in a discrete boundary in which over 1,000 people reside.  The Court finds this to be satisfactorily numerous.  That some of these property owners may eventually be shown *not* to

have sustained property damage due to Defendants' petroleum byproduct emission is not dispositive of Rule 23(a)(1).  "All of this is at best an argument that some class members' claims will fail on the merits if and when damages are decided, a fact generally irrelevant to the district court's decision on class certification."  *Messner,* 669 F.3d at 823.

### Rule 23(a)(2)—Commonality

Rule 23(a)(2) requires a Court to find that "there are questions of law or fact common to the class," Fed.R.Civ.P. 23(a)(2), such that the class has "suffered the same injury as" the named plaintiff.  *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 157 (1982).  Rule 23(a)(2) requires that the claims of the named plaintiff and the class:

> depend on a common contention....That common contention, moreover, must be of such a nature that it is capable of classwide resolution–which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke....What matters to class certification...is not the raising of common 'questions'–even in droves–but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation.  Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

131 S.Ct. 2541, 2551 (2011), *quoting* Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U.L.Rev. 97, 132 (2009).  A "superficial" common question is not enough, but "even a single common question" can suffice for commonality.  *Jamie S. v. Milwaukee Public Schools,* 668 F.3d 481, 497 (7th Cir. 2012) (internal citations and quotations omitted); *see also Spano v. Boeing Company,* 633 F.3d 574, 588 (7th Cir. 2011) ("But this assumes that every question must be common, and, as we have discussed, that is not what Rule 23(a)(2) demands.").  "[A] common nucleus of operative fact is usually enough to satisfy the commonality requirement."  *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir. 1992).  Courts have found a common nucleus of operative fact in situations where a defendant has engaged in standardized conduct toward members of the class.  *See, e.g. Keele v. Wexler,* 149 F.3d 589, 594

(7th Cir. 1998) (listing cases).

Defendants argue there is no common question here, as the alleged pollution involves many acts over a large period of time by many actors—including non-defendants (Doc. 66, p. 26). They also argue there could be no classwide resolution because the impact to each property would have to be proved individually, and any such impact will inevitably vary (*Id.* at 26-27).

Again, this is a merits-focused argument. If Plaintiffs cannot prove that Defendants caused damage to their property, Defendants are not liable. But Plaintiffs do raise a common question: did Defendants' failure to contain petroleum byproduct at the refinery result in contamination to Roxana property? If the answer is 'yes,' then each property owner will have to show to what extent contamination damaged him. This does not destroy commonality. As Judge Posner recently said, writing for the Seventh Circuit in *Butler v. Sears, Roebuck and Co.,* (discussing Rule 23(b)(3)'s predominance requirement): "[T]he fact that damages are not identical across all class members should not preclude class certification." Nos. 11-8029, 12-8030, 2013 WL 4478200 at *5 (7th Cir. August 22, 2013). Answering the question that underlies Plaintiffs' claims may not be easy—there are competing expert damage models for example—but there is a common question, and resolving that common question will provide a common basis for liability for each class member.

### Rule 23(a)(3), (a)(4)—Typicality, Adequacy

A named plaintiff's claim is typical of the class "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler,* 149 F.3d 589*,* 595, (7th Cir. 1998), *quoting De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983). Distilling

the Supreme Court's decision in *General Telephone Company of the Southwest v. Falcon,* 457 U.S. 147 (1982), the Seventh Circuit stated that the "starting point" for the typicality analysis is "that there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano,* 633 F.3d at 586. "A class is disserved if its representative's claim is not typical of the claims of the class members, for then if his claim fails, though claims of other class members may be valid, the suit will at the least be delayed by the scramble to find a new class representative. Alternatively, a class representative's atypical claim may prevail on grounds unavailable to the other class members, leaving them in the lurch." *CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 724 (7th Cir. 2011)

"[T]he usual practical significance of lack of typicality, as again explained in *CE Design,* is that it undermines the adequacy of the named plaintiff as a representative of the entire class." *Randall v. Rolls-Royce Corp.,* 637 F.3d 818, 824 (7th Cir. 2011). In determining whether the interests of a class will be represented adequately, courts look to "the adequacy of the named plaintiff's counsel, and the adequacy of representation provided in protecting the different, separate, and distinct interest of the absentee members." *Secretary of Labor v. Fitzsimmons,* 805 F.2d 682, 697 (7th Cir. 1986) (en banc). The Rule 23(a)(4) determination also looks to the adequacy of the named plaintiff, as "named plaintiffs who are subject to a defense that would not defeat unnamed class members are not adequate class representatives." *Randall v. Rolls-Royce Corp.,* 637 F.3d 818, 824 (7th Cir. 2011); *see also CE Design Ltd. v. King Architectural Metals, Inc.,* 637 F.3d 721, 726 (7th Cir. 2011) ("A named plaintiff who has serious credibility problems or who is likely to devote too much attention to rebutting an individual defense may not be an

adequate class representative.").

Defendants argue that named Plaintiffs' injuries are atypical of the class because the named Plaintiffs admitted at their depositions they had no basis, other than their attorneys' representations, to believe their properties were contaminated or their property values decreased (Doc. 65, p. 45; Doc. 66, p. 38). Neither, they argue, have Plaintiffs' experts considered whether the named Plaintiffs properties are representative of all Roxana properties (Doc. 66, p. 39). But an expert opinion that the claims are typical is not necessary. Named Plaintiffs claim they incurred property damage because Defendants allowed hazardous petroleum by-products to flow from the nearby refinery. All purported class members have an identical claim. Defendants have not defeated named Plaintiffs' claims at this point, nor is there any indication that those Plaintiffs' nascent understanding of the alleged contamination is atypical. Either Defendants' acts caused petrochemical contamination in Roxana resulting in negligence, trespass, public nuisance, private nuisance, unjust enrichment, and the need for medical monitoring; or they didn't. If they did, each Roxana property owner may have different damages to prove. Nothing indicates that named Plaintiffs' claims diverge from the claims of unnamed Roxana property owners. Defendants also claim named Plaintiffs the Cobines are particularly susceptible to a statute of limitations defense (Doc. 65, p. 45). But there is no indication that the Cobines' general knowledge of refinery pollution is atypical of any area resident. Additionally, Plaintiffs claim this is a continuing contamination, so a successful statute of limitations defense is hardly cut and dried. *See Village of Roxana v. Shell Oil Company,* SDIL Case No. 12-577-GPM, Doc. 60. The named Plaintiffs' claims are no weaker than any potential plaintiffs. The typicality and adequacy requirements are satisfied.[2]

---

[2] The Court knows Plaintiffs' counsel as experienced and qualified attorneys who are fully

### Rule 23(b)(3)–Predominance and Superiority

"When certification is sought under Rule 23(b)(3), as it is here, proponents of the class must [] show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy." *Messner v. Northshore University HealthSystem,* 669 F.3d 802, 811 (7th Cir. 2012). To show predominance, plaintiffs do not need to "prove that the predominating question will be answered in their favor" or "prove that each element of [their] claim is susceptible to classwide proof." *Amgen,* 113 S.Ct. at 1196.

Defendants argue that common questions do not predominate individual questions because Plaintiffs reference an irrelevant standard of liability in their motion to certify the class, Plaintiffs cannot show classwide exposure or contamination; and proof of damages will be property-specific (Doc. 65, pp. 26-41; Doc. 66, p. 44). Defendants harp on a particular benchmark for "contamination" in Plaintiffs' papers—benzene groundwater concentration at or above 5 micrograms per liter, which is the State of Illinois's threshold limit for maximum allowable levels (Doc. 50, p. 5, 17). Indeed Plaintiffs state "the class Plaintiffs seek to certify does not encompass owners of all of the property the benzene has reached. Rather, it is limited to owners of property where benzene contamination in the groundwater is at of above 5 [micrograms per liter]" (Doc. 50, p. 17). The class the Court is certifying, however, is the class bounded by the geographic limits above. The certified class does not reference the 5 microgram per liter standard. Class members are property owners in the Village. The onus is on Plaintiffs to prove the class members were injured. Plaintiffs may try to do so by reference to the 5 microgram per liter standard. But the Court does not at this time weigh in on the merits of this

---

capable of adequate class representation.

method of proving damage. It is enough at this stage that Plaintiffs will rely on "common evidence and methodology" to show injury. *Butler,* 2013 WL 4478200 at *4. *Butler* effectively shuts down Defendants' arguments against predominance. Common proof of damages is simply not required for class certification. Judge Posner writes:

> It would drive a stake through the heart of the class action device, in cases in which damages were sought rather than an injunction or a declaratory judgment, to require that every member of the class have identical damages…the fact that damages are not identical across all class members should not preclude class certification. Otherwise defendants would be able to escape liability for tortious harms of enormous aggregate magnitude but so widely distributed as not to be remediable in individual suits.

*Id.* at *5. Individual concerns do not outweigh common ones here.

Defendants argue that the 'myriad' individualized issues in the case militate against finding that a class action is the superior method for adjudication (Doc. 65, pp. 35-37; Doc. 66, pp. 39-41). "[C]lass action treatment is appropriate and is permitted by Rule 23 when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech v. Met-Coil Systems Corp.,* 319 F.3d 910, 911 (7th Cir. 2003). The questions of whether hazardous petroleum byproduct pervades village property and of whether Defendants are complicit in any resultant damage are best suited to class-wide resolution. Answering these questions across multiple fact-finders would do nothing to increase the "accuracy of the resolution" and would, indeed, be redundant and an unnecessary strain on the dockets of multiple judges. *Medjrech*, 319 F.3d at 911. Neither do the apparently related state actions make the class device any less satisfactory here (Doc. 66, p. 41). Plaintiffs in those cases are represented by able counsel, and, significantly, may opt-out of this class. *See Harkins v.*

*Riverboat Services, Inc.,* 385 F.3d 1099, 1101 ("Compare class actions under Fed.R.Civ.P. 23(b)(3), in which the consent of class members is not required; instead they have a right to be notified of the class action and to opt out of it and seek their own remedies."); *see also Abbott v. Lockheed Martin,* 2013 WL 4010226 at *9 ("But this court has never held, and *Spano* did not imply, that the mere possibility that a trivial level of intra-class conflict may materialize as the litigation progresses forecloses class certification entirely.").

**Conclusion**

The requirements of Federal Rule of Civil Procedure 23 are satisfied and Plaintiffs' motion for class certification is **GRANTED.** The Court hereby **CERTIFIES** the following class:

> **All persons (including non-governmental entities) who own real property in the Village of Roxana, Illinois that includes any portion of any of the parcels on the Village map listed in the table attached hereto as Attachment A.**

This certification is conditional and may be altered or amended before a decision on the merits.

The Court **APPOINTS** Jeana Parko, Delbert R. Cobine, Janice A. Cobine, and Rodger Jennings as Class Representatives. The Court further **APPOINTS** the law frims of Simmons Browder Gianaris Angelides & Barnerd LLC and Hanly Conroy Bierstein Sheridan Fisher & Hayes LLP as Class Counsel.

**IT IS SO ORDERED.**

**DATED**: September 3, 2013

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge