# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

JEANA PARKO, et al.,      )
a Municipal Corporation,      )
     )
         Plaintiff,      )
     )
vs.      )     Case No.: 3:12-cv-00336-NJR-RJD
     )
SHELL OIL COMPANY, et al.      )
     )
         Defendants.      )

---

## PLAINTIFFS' MOTION AND MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS SETTLEMENT

Ted N. Gianaris (#6237156)
tgianaris@simmonsfirm.com
Jo Anna Pollock (#6273491)
jpollock@simmonsfirm.com
SIMMONS HANLY CONROY
One Court Street
Alton, IL 62002
Tel: 618-259-2222

Melissa K. Sims
simsmelissa7@gmail.com
Melissa K. Sims Law Office
1611 Fifth Street
Peru, IL 61356
Tel: 815-224-2030

- and -

Paul J. Hanly, Jr.
phanly@simmonsfirm.com
Jayne Conroy
jconroy@simmonsfirm.com
Andrea Bierstein
abierstein@simmonsfirm.com
SIMMONS HANLY CONROY
112 Madison Ave., 7th Floor
New York, New York 10016
Tel: (212) 784-6400

Derek Y. Brandt
derek@brandtlawllc.com
Brandt Law LLC
P.O. Box 487
Edwardsville, IL 62025
Tel: 618-307-6116

Attorneys for Plaintiffs and Putative Class
June 16, 2017

# TABLE OF CONTENTS

*Page*

INTRODUCTION ........................................................................................................ 1

STATEMENT OF FACTS ............................................................................................ 3

   The Named Plaintiff and the Litigation ..................................................... 3

   The Settlement ............................................................................................... 4

THE PROPOSED CLASS .......................................................................................... 6

APPLICABLE LEGAL STANDARDS ......................................................................... 6

ARGUMENT ............................................................................................................. 7

   I.     THE REQUIREMENTS FOR CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS HAVE BEEN MET ........................................................................ 7

        A.     The Class Is So Numerous that Joinder Is Impracticable .................. 7

        B.     The Claims of the Class Members Present Common Questions ....... 8

        C.     Plaintiffs' Claims Are Typical ............................................................ 9

        D.     Plaintiff Will Fairly and Adequately Represent the Class ............... 11

        E.     The Requirements of Rule 23(b)(3) Are Satisfied ............................. 11

                1.    *Common Questions Predominate Over Individual Ones* ............ 12

                2.    *A Class Action Is the Superior Means of Adjudicating This Dispute* ....................................................................................... 14

   II.    THIS COURT SHOULD APPOINT TED N. GIANARIS, ANDREA BIERSTEIN AND JO ANNA POLLOCK AS CLASS COUNSEL .................................................. 16

   III.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE ........................................................ 18

   IV.    THE PROPOSED NOTICE TO THE CLASS IS THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES ........................................................... 20

CONCLUSION ......................................................................................................... 21

# TABLE OF AUTHORITIES

## Cases

*Abbott v. Lockheed Martin Corp.*, 286 F.R.D. 388 (S.D. Ill. 2012), *rev'd on other grounds*, 725 F.3d 803 (7th Cir. 2013) ........................................................................... 7

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) ............................................... 13

*Butler v. Sears, Roebuck & Co.*, 702 F.3d 359 (7th Cir. 2012), *vac'd & rem'd*, 133 S. Ct. 2768, *on remand*, 727 F.3d 796 (7th Cir. 2013) ......................................................... 12

*Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013) ............................... 12, 13

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) .................................. 14

*Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387 (N.D. Ill. 2006) ................................. 14

*Chavez v. Don Stoltzner Mason Contractor, Inc.*, 272 F.R.D. 450 (N.D. Ill. 2011) .................. 7

*Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374 (S.D. Ill. 2008) ..................... 7

*Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013) ........................................................ 12

*De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225 (7th Cir.1983) ....................... 10

*Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013) ........................... 16

*General Telephone Co. v. Falcon*, 457 U.S. 147 (1982) ................................................. 10

*Gomez v. Illinois State Bd. of Ed.*, 117 F.R.D. 394 (N.D.Ill.1987) ............................... 7

*Hale v. AFNI, Inc.*, 264 F.R.D. 402 (N.D. Ill. 2009) ..................................................... 7

*Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344 (N.D. Ill. 2008) .......................... 14

*Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012) .............................................................................................................. 12

*Olson v. Brown*, 284 F.R.D. 398 (N.D. Ind. 2012) ......................................................... 7

*Robidoux v. Celani*, 987 F.2d 931 (2d Cir. 1993) ........................................................... 7

*Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992) ...................................................... 10

*Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565, 2015 WL 6689359 (S.D. Ill. Nov. 3, 2015) ............................................................................................................................... 10

*Westefer v. Snyder*, CIV. 00-162-GPM, 2006 WL 2639972 (S.D. Ill. Sept. 12, 2006) ............ 11

## Statutes

Fed. R. Civ. P. 23 ..................................................................................................... 11, 17

Fed.R.Civ.P. 23(g) ........................................................................................................ 16

Plaintiff submits this combined motion and memorandum of law in support of her motion for preliminary approval of the class-wide settlement reached in this case.

## INTRODUCTION

After five years of litigation, substantial discovery, and over a year of negotiation, the parties, Plaintiff Jeana Parko, individually and on behalf of all others similarly situated ("Named Plaintiff") and Defendants Shell Oil Company, Equilon Enterprises, LLC d/b/a Shell Oil Products US, ConocoPhillips Company, WRB Refining LP, ConocoPhillips WRB Partner LLC and Cenovus GPCO LLC (collectively, "Defendants") have reached a proposed settlement that resolves all claims asserted in this action as set forth in the Class Settlement Administration Agreement (attached as Exhibit 1), Master Shell Settlement Agreement (attached as Exhibit 2) and Master ConocoPhillips Settlement Agreement (attached as Exhibit 3) (collectively, the "Settlement").

This Settlement will resolve a controversy that began decades ago when pollution emanated from the Wood River oil refinery ("the Refinery") located in Roxana, Illinois. Defendants manufactured, stored, and transported benzene and other hydrocarbons at the Refinery and its associated pipelines from 1918 through present date. Over the years, Defendants' benzene, volatile organic compounds and other hydrocarbons trespassed onto Named Plaintiff's property as the result of releases and spills from leaking pipes and storage tanks, transfer of product, equipment failures and ruptures. These releases and spills ultimately contaminated the soil, surface water and groundwater. This lawsuit followed.

Throughout the litigation, Defendants have insisted that the contamination is in amounts lower than Named Plaintiff contends, that they are not liable for the contamination to the extent it exists and that Named Plaintiff nor anyone else similarly situated has been damaged. In order to settle this dispute, however, Defendants have

now agreed to pay a class of residents whose property allegedly has been damaged from the contamination.

In order to effectuate this Settlement, Named Plaintiff now seeks that the Court enter the [Proposed] Preliminary Approval Order (attached as Exhibit 4), which includes: preliminary certification of the settlement class under Rule 23 of the Federal Rules of Civil Procedure for settlement purposes only; preliminary approval of the settlement including the Settlement Class Allocation Plan; appointment of Named Plaintiff, Jeana Parko, as representative of the settlement class for settlement purposes; approval of the proposed form and manner of notice to the class; appointment of class counsel and an order (a) setting deadlines and procedures for the class notice and for class members to submit claims, opt-out or object, (b) directing the parties to cause the publication notice to be published, (c) scheduling a fairness hearing for the Court to consider final approval of the settlement, (d) staying all proceedings, other than proceedings as may be necessary to carry out the terms and conditions of the Settlement Agreement, (e) pending final approval, preliminarily enjoin each Member of the Settlement Class who has not timely opted out of the Settlement Class in accordance with the Court's directions, from maintaining, commencing, prosecuting or pursuing either directly, representatively or in any other capacity any Released Claim, and (f) ordering that all Members of the Settlement Class who do not opt out by the Court-imposed deadline shall be bound by the terms of the Class Settlement and their Claims against the Defendants released and extinguished.

As described below, the class should be conditionally certified for purposes of settlement and class counsel appointed because all the requirements for such certification under Rule 23(a) and Rule 23(b) have been met. This Court should further preliminarily approve the proposed Settlement, which provides immediate and substantial benefit to all class members.

## STATEMENT OF FACTS

### The Named Plaintiff and the Litigation

Plaintiff Jeana Parko is the owner of certain improved real property located at 132 East 5th Street, Roxana, Illinois. She purchased that property in or about 1999 and has resided at the address since that time. She commenced this action on behalf of herself and all others similarly situated on April 16, 2012, in the Circuit Court for the Third Judicial Circuit, Madison County, Illinois, alleging damage to the value and use and enjoyment of her property arising from contamination of air and groundwater emanating from the Refinery over a period of decades. Defendants removed the action to this Court.

In defending the action, Defendants raised numerous defenses, including contentions that Plaintiff's claims were barred and/or preempted under various state and federal laws and regulations, that neither Plaintiff nor anyone else in the putative class had suffered damages, and that a class could not be certified because the location and scope of contamination, if any, was not uniform. Defendants moved to dismiss Plaintiff's claims and the motion was fully litigated and ultimately denied by the district court.

The parties disagreed about the scope of discovery. In the end – and after presentation of certain discovery disputes to the Court – ConocoPhillips produced 53,103 pages of documents, responded to interrogatories and requests for production, and provided a summary compilation of data with respect to additional information. Shell produced 696,393 pages of documents, responded to interrogatories and requests for production and provided a summary compilation of data with respect to additional information. There has been a total of 25 depositions taken in this litigation.

Plaintiffs served two motions for class certification. The first motion was served on February 15, 2013, was supported by eight affidavits or certifications (including two from experts) and five exhibits. The district court granted Plaintiff's motion on

September 3, 2013, certifying a class of property owners within a specified area of Roxana. Defendants sought interlocutory appeal, under Rule 23(f), of the court's class certification order. The Seventh Circuit granted the interlocutory appeal and, on January 17, 2014, reversed the class certification, with directions that the court revisit the issue of certification in conformity with the analysis in the opinion.

The parties resumed litigation of the case and, on August 14, 2015, Defendants moved for summary judgment on grounds of preemption. On November 6, 2015, Plaintiff filed her second motion for class certification, using a different definition of the proposed class than the one used in the prior, reversed certification. The second class certification motion was supported by two affidavits or certifications and nine exhibits. Defendants stated their intention to vigorously oppose the motion.

**The Settlement**

The parties began negotiating a possible settlement of this action in October 2014. Negotiations were unsuccessful, and the parties resumed litigation. There were periodic settlement discussions over the next year, none of which were successful. The parties began a new round of settlement discussions in 2015. This time, after several months of negotiation, the parties were able to reach agreement on the terms of settlement, which are set forth in the Settlement.

Under the terms of the Settlement, the proposed Class consists of the following: all persons who own or owned or occupy or occupied real property in the Village of Roxana, Illinois within the Settlement Class Area, during the Settlement Time Period, regardless of whether or not they file a Claim Form in accordance with the procedures set forth in the Shell Settlement Agreement, the Administration Agreement, the Claim Form and the Class Notice, who do not timely and effectively opt out following the procedures set forth in the Shell Settlement Agreement, the ConocoPhillips Settlement Agreement, and the Administration Agreement. The class definition is different from the definitions used in either of Plaintiff's previous class certification motions. The

Settlement Class Area is based on and identical to the Study Area defined by the Illinois Environmental Protection Agency ("IEPA") as part of the IEPA-supervised investigation and remediation of groundwater contamination in the area.

Plaintiffs Jeana Parko is the proposed Class Representative. Proposed Class Counsel are Ted N. Gianaris, Andrea Bierstein and Jo Anna Pollock.

The Settlement provides for substantial relief to class members in the form of cash compensation totaling more than $ 4 million. There are over 367 Class Members. By agreement of the parties, allocation of the settlement proceeds among the class members will be based upon a variety of readily-ascertainable factors, such as: the period and length of occupancy on the Settlement Class Area property; the period and length of ownership of the Settlement Class Area property; the type of property (residential, commercial, other); if residential, the assessed value of the Settlement Class Area property; whether the property is located within the boundaries of a specified groundwater contour on a figure developed by a consultant for Defendants in 2012; and whether the ownership or occupancy of the Member of the Settlement Class ended before March 2007. The specific formula for the settlement consideration of Class Members is set forth at Exhibit 4 of the Class Settlement Administration Agreement. The aggregate cash settlement value to the Class is approximately $4,830,000 (four million eight-hundred thirty thousand dollars).

In addition to the settlement consideration to participating Class Members, Class Counsel and Defendants will pay the cost of notice and administration of the settlement as may be approved by the Court. These payments will not reduce the benefits otherwise available to participating Class Members. The Settlement further provides that Class Counsel will seek an award of attorneys' fees not to exceed 25% of the settlement consideration made available to participating Class Members and expenses incurred.

## THE PROPOSED CLASS

Plaintiffs seek conditional certification, for settlement purposes, of the following Class: all persons who own or owned or occupy or occupied real property in the Village of Roxana, Illinois within the Settlement Class Area, during the Settlement Time Period, regardless of whether or not they file a Claim Form in accordance with the procedures set forth in the Shell Settlement Agreement, the Administration Agreement, the Claim Form and the Class Notice, who do not timely and effectively opt out following the procedures set forth in the Shell Settlement Agreement, the ConocoPhillips Settlement Agreement, and the Administration Agreement.

Excluded from the Class are the Defendants, the Village of Roxana, Plaintiffs' Counsel and the Court.

## APPLICABLE LEGAL STANDARDS

Preliminary approval is the first in a two-step process before a class action settlement may be approved. *See* 2 McLaughlin on Class Actions § 6:7 (8th Ed.) ("McLaughlin"). *See also* Manual for Complex Litigation § 21.632 (4th Ed. 2004). "First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation." *Id.* Once the court grants preliminary approval, and notice is provided to the class, the court conducts a fairness hearing to consider final approval of the proposed settlement. McLaughlin § 6:7.

As to approval of the settlement itself, "[a] preliminary fairness assessment is not to be turned into a trial or rehearsal for trial on the merits, as it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements." 2 McLaughlin on Class Actions § 6:7 (8th Ed.). Rather, "[p]reliminary approval is an initial evaluation by the court of the fairness of the proposed settlement, including a determination that there are no obvious deficiencies such as indications of a collusive negotiation, unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys, all

determined on the basis of written submissions and informal presentation by the settling parties." In this case, because all of the prongs of Rule 23(a) and one of the prongs of Rule 23(b) are met, a class action may be maintained. FED. R. CIV. P. 23.

## ARGUMENT

### I. THE REQUIREMENTS FOR CONDITIONAL CERTIFICATION OF THE SETTLEMENT CLASS HAVE BEEN MET

#### A. The Class Is So Numerous that Joinder Is Impracticable

Rule 23(a)(1) requires that the proposed class be so numerous that joinder of all members is impracticable. FED. R. CIV. P. 23(a)(1). Impracticability does not mean impossibility of joinder, but refers to the difficulty of joinder. *Robidoux v. Celani*, 987 F.2d 931, 935 (2d Cir. 1993); *Olson v. Brown*, 284 F.R.D. 398, 407 (N.D. Ind. 2012); *Gomez v. Illinois State Bd. of Ed.*, 117 F.R.D. 394, 398–99 (N.D.Ill.1987). In determining whether joinder of all class members is impracticable, "the court should consider factors including the size of the class, the geographic dispersion of the members, . . . the nature of the relief sought, and the practicality of forcing relitigation of a common core of issues." *Gomez*, 117 F.R.D. at 399 (citations omitted).

Judges in this district and elsewhere in this Circuit have found that "the numerosity element [is] satisfied where the putative class would number in the range of as few as ten to forty class members." *Abbott v. Lockheed Martin Corp.*, 286 F.R.D. 388, 395 (S.D. Ill. 2012), *rev'd on other grounds*, 725 F.3d 803 (7th Cir. 2013), *quoting Cima v. WellPoint Health Networks, Inc.*, 250 F.R.D. 374, 378 (S.D. Ill. 2008); *accord Chavez v. Don Stoltzner Mason Contractor, Inc.*, 272 F.R.D. 450, 454 (N.D. Ill. 2011); *Hale v. AFNI, Inc.*, 264 F.R.D. 402, 404 (N.D. Ill. 2009). Here, the Settlement Class Area consists of 183 parcels of property—all of which have been identified. *See* Exhibit 8, Appendix IA. These properties are a sufficient number to satisfy the numerosity element.

Moreover, the numerosity element is satisfied because the Class is clearly defined by specific, ascertainable geographic boundaries. *See Mejdrech*, 319 F.3d at 911

("The class members' homes occupy a contiguous area the boundaries of which are known precisely"); *Leib II*, 256 F.R.D. 178 (where class was defined by boundary consisting of specific local streets, court found that "[t]he streets and roads described form a precise boundary," properly defining the class).

Similarly, the Settlement Class Area in this case consists of objective, geographic boundaries because it is defined as privately-owned real property parcels located in the portion of Roxana, Illinois enclosed by commencing at the southwest corner of South Central Avenue and Rand Avenue (the "Beginning Point"), extending north along the east side of South Central Avenue to the south side of the alley between First Street and East Tydeman Avenue, then extending east along the south side of the alley to South Chaffer Avenue, then extending south to a point due east of the Beginning Point, then extending west to the Beginning Point. Moreover, the area is the same as the IEPA Study Area, which the IEPA defined as part of the agency-supervised investigation of the groundwater contamination. For these reasons, the numerosity requirement in Rule 23(a)(1) is met.

## B.    The Claims of the Class Members Present Common Questions

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Fed.R.Civ.P. 23(a)(2). In *Wal–Mart*, 131 S.Ct. at 2551, the Supreme Court explained that "[c]ommonality requires the plaintiff to demonstrate that the class members have suffered the same injury." Moreover, the *Wal-Mart* Court explained, a common question "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.*

In *Mejdrech*, the Seventh Circuit held that "[t]he questions whether Met-Coil leaked TCE in violation of law and whether the TCE reached the soil and groundwater beneath the homes of the class members are common to all the class members." 319 F.3d at 911. Similarly, in *Leib I*, the court found:

The plaintiffs' claims arise out of the same core of operative facts, that is, the allegation that the defendants allowed dangerous levels of H2S to contaminate the air in the Class Area. Such alleged behavior constitutes standardized conduct toward all prospective class members. Resolution of this question–whether and, if so, to what extent the defendants caused contamination in the Class Area will certainly advance the litigation.

2008 WL 5377792, *7. More recently, in *Greene,* the court noted that the commonality requirement is satisfied "where the same conduct by the defendants is alleged to have caused similar damage to each plaintiff and to support liability on the same legal theories." Examining the claims of the members of the proposed class, the *Greene* court held that the questions whether defendants' operation of the recycling site at issue created an endangerment to the health and environment of all the members of the class and damaged their property interests were common and satisfied the requirements of Rule 23(a)(2). *Greene, slip op.* at 3-4.

Here, the common questions are similar to those identified as common in *Mejdrech, Leib I,* and *Greene.* Whether ConocoPhillips and/or Shell improperly leaked benzene and whether the benzene reached the soil and groundwater in Roxana; whether, as a result of that contamination, residents in Roxana have suffered a loss in the use and enjoyment of their properties; and whether, as a result of that contamination, properties in the area have suffered a diminution in property value are the central issues in this case. These issues arise from a common course of conduct by the defendants – the releases of hydrocarbons in connection with the operation of the Refinery and related systems. Just as these questions were found to be common on the similar facts of *Mejdrech, Leib,* and *Greene,* so, too, these questions are common here and satisfy the requirements of Rule 23(a)(2).

C. **Plaintiffs' Claims Are Typical**

Rule 23(a)(3) requires that the claims or defenses of the representative parties be typical of the claims or defenses of the Class. *See* FED. R. CIV. P. 23(a)(3). The commonality and typicality requirements of Rule 23(a) tend to merge, as "both serve as

guideposts for determining whether... the named plaintiff's claim and the class claims are so-interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. v. Falcon*, 457 U.S. 147, 157 n.13 (1982); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). A plaintiff's claim is typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario*, 963 F.2d at 1018, *quoting De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir.1983); 1 Newberg on Class Actions § 3.13 (4th ed. 2002). Typicality does not require that all class members suffer the same injury as the named class representative. *Rosario*, 963 F.2d at 1018. Indeed, typicality may be found even in instances where "there are factual distinctions between the claims of the named plaintiffs and those of the other class members." *De La Fuente*, 713 F.2d at 232. Instead, the court looks to "the defendant's conduct and the plaintiff's legal theory. . . ." *Rosario*, 963 F.2d at 1018. Thus, as this Court has found, typicality is satisfied when "the class members were all exposed to the exact same course of conduct by Defendants." *Suchanek v. Sturm Foods, Inc.*, No. 11-CV-565, 2015 WL 6689359 (S.D. Ill. Nov. 3, 2015) (Rosenstengel, J.) (on remand).

Here, the proposed class representative, Parko, owns property within the class boundaries. Parko seeks to advance the same legal claims on behalf of the proposed Class as she advances for herself. Because Plaintiff's claims, as well as those of the proposed Class, arise from the same events, practices, and course of conduct; are based on the same legal theories; and require the resolution of common questions of law and fact, the typicality element in Rule 23(a)(3) is satisfied. *See Greene, slip op.* at 4 ("The six named plaintiffs are typical of the defined class because they all reside within the geographic area that defines the class, and all claim to have been injured by the same alleged contamination, pollutants and other harms that are the basis for the same claims on behalf of the entire class."); *see also Leib I*, 2008 WL 5377792, *8 (environmental

10

plaintiffs' claims typical because all claims turn on extent of contamination); *Mejdreck*, 2002 WL 1838141, *4 (plaintiffs' claims typical because "they were based on the common allegation that Defendants contaminated the groundwater, soil and wells in the plume of contamination" and because plaintiffs were not asserting claims based on personal injuries).

### D. Plaintiff Will Fairly and Adequately Represent the Class

The "adequacy of representation" element in Rule 23(a)(4) looks to whether the class representative has antagonistic or conflicting claims with other members of the class; and whether the class representative has a sufficient interest in the outcome to ensure vigorous advocacy." *Leib I*, 2008 WL 5377792, *8. "In evaluating adequacy, a court is required to make sure that there are no inconsistencies between the interests of the named party and the class that he or she seeks to represent." *Westefer v. Snyder*, CIV. 00-162-GPM, 2006 WL 2639972 (S.D. Ill. Sept. 12, 2006). Here, the Representative Plaintiff will fairly and adequately protect the interests of the Class because her interests are identical to those of the other members of the Class. As already noted, Parko owns property and resides within the class boundaries; her interests are identical to those of other owners of property and residents also within those boundaries. Plaintiff knows of no conflict between her interests and those of the members of the Class she seeks to represent; accordingly, Rule 23(a)(4) has been satisfied.

### E. The Requirements of Rule 23(b)(3) Are Satisfied

Plaintiff seeks conditional certification under Rule 23(b)(3), which requires the Court to determine "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23. Here, both inquiries are satisfied.

*1.     Common Questions Predominate Over Individual Ones*

In this case, the questions of law or fact common to the class members clearly predominate over any questions affecting only individual members. In *Butler v. Sears, Roebuck & Co.*, 702 F.3d 359, 361 (7th Cir. 2012) ("*Butler I*"), *vac'd & rem'd*, 133 S. Ct. 2768, *on remand*, 727 F.3d 796 (7th Cir. 2013) ("*Butler II*"),[1] the Seventh Circuit granted defendants' petition for leave to appeal a grant of class certification "in order to clarify the concept of 'predominance' in class action litigation." The Court explained:

> Rule 23(b)(3) conditions the maintenance of a class action on a finding by the district court 'that the questions of fact or law common to class members predominate over any questions affecting only individual members.' If there are no common questions or only common questions, the issue of predominance is automatically resolved. Any other case requires "weighing" unweighted factors, which is the kind of subjective determination that usually—including the determination whether to certify a class—is left to the district court, subject to light appellate review.

702 F.3d at 361. "There is no mathematical or mechanical test for evaluating predominance." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 814 (7th Cir. 2012), *reh'g denied* (Feb. 28, 2012). In *Butler*, however, the Seventh Circuit provided further guidance as to the nature of the "predominance" inquiry:

> Predominance is a question of efficiency. . . . Is it more efficient, in terms both of economy of judicial resources and of the expense of litigation to the parties, to decide some issues on a class basis or all issues in separate trials?

*Butler*, 702 F.3d at 362 (citations omitted).[2] *See also Suchanek*, 764 F.3d at 759.

---

[1] The Supreme Court vacated and remanded the Seventh Circuit's decision in *Butler I* for reconsideration in light of *Comcast Corp. v. Behrend*, 133 S.Ct. 1426 (2013). Upon remand, the Seventh Circuit determined that its previous analysis was entirely consistent with *Comcast* and re-affirmed its prior decision. *Butler II*, 727 F.3d 796. Plaintiffs believe both *Butler* opinions are instructive on questions pertaining to class certification and, in particular, the predominance requirement.

[2] In *Butler II*, the Seventh Circuit specifically found that its emphasis on efficiency in *Butler I* had not been rejected by the Supreme Court in *Comast*. 727 F.3d at 800.

The Seventh Circuit further elaborated the concept of predominance in its *Butler II* opinion, where it found defendant's contention that predominance means simply that the *number* of common issues must exceed the number of individual issues to be "[i]ncorrect." 727 F.3d at 801. Rather, the Court explained, "predominance requires a qualitative assessment too; it is not bean counting." *Id.* The question is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." 727 F.3d at 801, *citing Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 623 (1997).

Here the common questions predominate over any individual issues that may arise. To begin with, as noted above, the issues whether ConocoPhillips and/or Shell improperly leaked benzene and whether the benzene reached the soil and groundwater dominate this litigation, all the more so because ConocoPhillips and Shell have asserted affirmative defenses stating that the groundwater contamination may have been caused or contributed to by others.

In this case, however, unlike in *Mejdrech,* the question whether class members have suffered damage as a result of the contamination in Roxana are also common. That is because the class Plaintiffs seek to certify does not depend on the amount of contamination under any particular piece of property, but rather on the location of the property in the IEPA Study Area and in relation to the 2012 Groundwater Contour (the contour developed by Shell's environmental consultant at the time this class action was filed).

Defendants' affirmative defenses also raise common questions. In Defendant Shell Oil Company and Equilon Enterprises LLC's Answer and Affirmative Defenses to Plaintiffs' Class Action Complaint, Shell raises issues of primary jurisdiction and preemption that are common to the claims of all class members. *See* Doc. # 3 at 29. As already noted, Shell also raises as a defense that ConocoPhillips, and/or other entities not party to the lawsuit, rather than Shell, are responsible for Plaintiffs' injuries. *See id.* at 28. ConocoPhillips similarly raises affirmative defenses based on preemption and the

purported liability of Shell and other entities not parties to the case. *See* Doc. #24 at 46-49.

With liability, fact of damage, and Defendants' claims concerning preemption and the liability of others all presenting common questions, it is clear that the common issues will predominate over the individual ones.

### 2. A Class Action Is the Superior Means of Adjudicating This Dispute

Rule 23(b)(3) requires a court to consider whether a class action is superior to alternate methods of adjudication. Factors relevant to the inquiry include the interest of members of the class in individually controlling the prosecution or defense of separate actions; the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and the difficulties likely to be encountered in the management of a class action. *See* FED. R. CIV. P. 23(b)(3).

The Seventh Circuit has found that a class action is the superior form of resolution "when the judicial economy from consolidation of separate claims outweighs any concern with possible inaccuracies from their being lumped together in a single proceeding for decision by a single judge or jury." *Mejdrech*, 319 F.3d at 911. Class actions have also been found to be superior where "potential damages may be too insignificant to provide class members with incentive to pursue a claim individually." *Herkert v. MRC Receivables Corp.*, 254 F.R.D. 344, 352-53 (N.D. Ill. 2008). Thus, "there is a strong presumption in favor of a finding of superiority when the alternative to a class action is likely to be no action at all for the majority of class members." *Cavin v. Home Loan Ctr., Inc.*, 236 F.R.D. 387, 396 (N.D. Ill. 2006), *citing Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("a class action has to be unwieldy indeed before it can be pronounced an inferior alternative -- no matter how massive the fraud or other wrongdoing that will go unpunished if class treatment is denied -- to no litigation at all.").

In *Mejdrech, Leib,* and *Greene,* class actions were found to be the superior means of adjudicating environmental pollution claims. *See Mejdrech,* 319 F.3d at 911-12; *Leib I,* 2008 WL 5377792, *11; *Greene, slip op.* at 6; *see also Mejdreck,* 2002 WL 1838141, *7. As the Court explained in *Leib,* because the questions "whether and to what extent the defendants unlawfully polluted the Class Area . . . . would be answered using the same proof for each proposed class member, . . . it would be a waste of time and resources to conduct thousands of trials to determine these same issues in individual cases." 2008 WL 5377792, *11. In *Greene,* the court explained, "the economies of time, effort and expense in a class action, as well as the avoidance of inconsistent determinations, make a class action far superior to multiple individual homeowner actions asserting separate claims." *Greene,* slip op. at 6. Similarly, the district court in *Mejdreck* noted that, because the claims of all class members involved the same core questions, *i.e.,* "whether or not and to what extent Defendants caused contamination of the area in question. . . . . . . it would be wholly inefficient to try thousands of separate cases. . . ." 2002 WL 1838141, *7. *See also Stoll,* 2010 WL 3613828 (class action superior in case involving environmental contamination from manufacturing facility); *Muniz,* 2005 WL 1243428 (class action was superior in case alleging that defendants contaminated drinking water with cancer-causing pollutants).

For the same reasons, a class action is superior in this case as well. It would be wholly inefficient for each member of the Class separately to prove that defendants released benzene and other contaminants from the Refinery and that those releases affected the property value. *See Greene, slip op.* at 7 ("the economics of proceeding as a class are beneficial for the many homeowners who likely would find the cost of litigation conducted individually to be prohibitive"); *Leib I,* 2008 WL 5377792, *11 ("Each individual's property damage . . . claim[] [is] not likely to warrant the time and expense of hiring the necessary expert witnesses for an individual case and pursuing it to judgment.").

Finally, the size of the proposed Class – too large for joinder and efficient separate adjudications, numbering in the hundreds, rather than the thousands or tens of thousands – ensures that this case will be manageable as a class action. As already noted, any individual issues that do arise can be more easily managed in a class of this size than in one numbering in the thousands or higher. This case thus contrasts sharply with *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013), where the Seventh Circuit recently found that the need for 2,341 separate evidentiary hearings to determine damages for individual class members might "swamp the Western District of Wisconsin with its two district judges," thus rendering the case unmanageable and warranting decertification.[3] Here, the proposed Class is neither too small, for the element of numerosity, nor too large to be manageable – it can be seen as a "Goldilocks class," neither too large nor too small, but just right for class treatment.

Because the four requirements of Rule 23(a) and Rule 23(b) have been established, the Court should grant preliminary approval of this class action settlement.

## II. THIS COURT SHOULD APPOINT TED N. GIANARIS, ANDREA BIERSTEIN AND JO ANNA POLLOCK AS CLASS COUNSEL

Rule 23 requires this Court, in conjunction with certifying a class, to appoint class counsel. Fed.R.Civ.P. 23(g). Here, the Court should appoint Ted N. Gianaris, Andrea Bierstein and Jo Anna Pollock with the firm of Simmons Hanly Conroy as Class Counsel.

Rule 23 provides the factors to be considered in the appointment of Class Counsel:

---

[3] The outcome of *Espenscheid* was also surely influenced by the refusal of plaintiffs' counsel to cooperate in finding a strategy for managing the case as a class action. *See* 705 F.3d at 775-76 ("The judge asked the plaintiffs' lawyer to propose a specific plan for litigating the case within the framework she had established. . . . The plaintiffs responded rather truculently by opposing bifurcation and subclasses and refusing to suggest a feasible alternative, including a feasible method of determining damages.")

Unless a statute provides otherwise, a court that certifies a class must appoint class counsel. In appointing class counsel, the court:

> (A) must consider:
>
>> (i) the work counsel has done in identifying or investigating potential claims in the action;
>>
>> (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action;
>>
>> (iii) counsel's knowledge of the applicable law; and
>>
>> (iv) the resources that counsel will commit to representing the class;
>
> (B) may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class;

Fed. R. Civ. P. 23(g)(1).[4]

As set forth in the Affidavit of Andrea Bierstein, Class Counsel has the requisite knowledge, experience, and resources to represent the Class. Ms. Bierstein, who has practiced in New York for more than 25 years and has been admitted to this Court since 1986, has extensive experience in complex litigation, including in class actions. The law firm where she is a shareholder, Simmons Hanly Conroy, is committed to this action and has devoted substantial resources to it having shouldered the heavy burdens of time and expenses. The attorneys have attended numerous court conferences, settlement meetings, and depositions in this case. The affidavit submitted demonstrates that attorneys with the firm sought to be appointed are more than qualified to act as Class Counsel.

---

[4] The rule also provides that the Court "(C) may order potential class counsel to provide information on any subject pertinent to the appointment and to propose terms for attorney's fees and nontaxable costs; (D) may include in the appointing order provisions about the award of attorney's fees or nontaxable costs under Rule 23(h); and (E) may make further orders in connection with the appointment." Fed. R. Civ. P. 23.

## III. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AS FAIR, REASONABLE, AND ADEQUATE

The certification of a class action is within the sound discretion of the trial court. *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 306 (7th Cir. 1985). "Provisional settlement, class certification, and appointment of class counsel have several practical purposes, including avoiding the costs of litigating class status while facilitating a global settlement, [and] ensuring notification of all class members of the terms of the proposed [s]ettlement [a]greement..." *Zolkos v. Scriptfleet, Inc.*, No. 12 Civ. 8230, 2014 WL 7011819, at *2 (N.D. Ill. Dec. 12, 2014).

When conducting a fairness determination, relevant factors include: "(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed." *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-4 (7th Cir. 2014). The Seventh Circuit noted that "[t]he most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Id.* citing *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 n. 44 (7th Cir. 1979).

At the preliminary approval stage, the extent of the district court's inquiry into the appropriateness of class certification and the reasonableness of the settlement terms depends, as it must, on the circumstances of the individual case. *In re Nat'l Collegiate Athletic Ass'n*, 314 F.R.D. 580, 589 (N.D. Ill. 2016). "Where the size of the class is small, the cost of notice minimal, and the issues discrete, the court may be able to determine that class certification is proper and the settlement is 'within the range of possible approval' with minimal fuss." *Id.* In contrast, where the putative class members range in the millions, the parties have completed extensive discovery, substantive objections

are raised at the preliminary stage, and the costs and efforts to provide notice are substantial, the court may engage in a more piercing and thorough analysis of the issues in the first instance, rather than waiting until the final approval hearing, in order promote the "just, speedy, and inexpensive" resolution of the case. *Id.*

Here, the proposed Settlement is well within the range of reasonableness. The proposed settlement is an excellent result given the numerous and substantial risks faced in this litigation. In particular, Defendants have raised a number of arguments and defenses in opposition to class certification, the merits of the case, and Class Members' ability to obtain damages. In the absence of a Settlement, the Settling Parties would present factual and expert testimony on each of these issues, and there is a risk that the Court or jury would resolve the ultimate issues of certification and liability against the Plaintiffs and the Class.

Moreover, the Settlement was reached only after completion of: (1) Plaintiffs' initial pre-filing factual investigation; (2) the review and analysis of over 750,032 pages of documents; (3) numerous interviews with third-party witnesses; (4) consultations with experts; (5) depositions of the named plaintiffs and of relevant employees of the Defendants and third party witnesses; (6) extensive research for, preparation and filing of two motions and submissions in support of class certification; and (7) intensive settlement negotiations occurring several times over more than a year. Thus, the Settlement was not achieved until the settling parties had sufficient familiarity with the issues in the case to evaluate its merits and agree on a settlement framework that was both acceptable to Defendants and reasonable, fair and adequate to the Class.

Further, the immediate cash compensation based on various factors including ownership of property, assessed value and location of property over the groundwater plume is equitable and reasonable given the risks attendant in pursuing further litigation. Given that the proposed settlement is the result of serious, arm's-length negotiations between the parties and has no obvious deficiencies, the Court should

grant preliminary approval and direct that notice of a fairness hearing be given to Class Members. This is consistent with judicial policy highly favoring class action settlements and upholding them whenever possible.

## IV. THE PROPOSED NOTICE TO THE CLASS IS THE BEST NOTICE PRACTICABLE UNDER THE CIRCUMSTANCES

Rule 23(c)(2)(B) provides:

> For any class certified under Rule 23(b)(3), the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.

FED. R. CIV. P. 23(c)(2)(B). The rule further prescribes the required content of the notice, including (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class members may enter an appearance through an attorney; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment. *Id.* In addition, with respect to any proposed settlement of a class action, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal."

Whether judged under Rule 23(c)(2)(B) or under Rule 23(e), the notice proposed here is appropriate and should be approved. The parties have gone to great lengths to identify both the addresses encompassed by Settlement Class Area (*see* Appendix IA of Exhibit 2) and the Class Members by name to the extent possible at this stage (*see* Appendix IB of Exhibit 2). The properties and class members identified therein will receive actual notice via first class mail of the settlement. Beyond this, a Publication Notice will be published in three local newspapers, the *Edwardsville Intelligencer,* the *Alton Telegraph,* and the *Belleville News Democrat,* at least three times in a three-week period, and the Class Notice will be posted at the Village of Roxana Village Hall and at the Roxana Public Library. Finally, a web site and toll-free number will be provided,

both of which will provide details of the settlement and copies of the Class Notice and Claim Form upon request. Given the size of the class—most of whom will receive actual notice by mail—the proposed notice plan in this case is the best notice practicable.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for preliminary approval and enter the proposed order attached as Exhibit 4 and grant such further relief as this Court deems proper.

Dated: June 16, 2017                     SIMMONS HANLY CONROY


                                         */s/ Jo Anna Pollock*
                                         Mr. Ted N. Gianaris (#6237156)
                                         Ms. Jo Anna Pollock (#6273491)
                                         One Court Street
                                         Alton, Illinois 62002
                                         Telephone:  618-259-2222
                                         Facsimile:  618-259-2251
                                         tgianaris@simmonsfirm.com
                                         jpollock@simmonsfirm.com

                                         and

Mr. Paul J. Hanly, Jr.                   Ms. Melissa K. Sims
Ms. Jayne Conroy                         Melissa K. Sims Law Office
Ms. Andrea Bierstein                     1611 Fifth Street
Simmons Hanly Conroy                     Peru, IL  61356
112 Madison Ave.                         Telephone:  815-224-2030
New York, NY  10017-1111                 simsmelissa7@gmail.com
Telephone: 212-784-6401
phanly@simmonsfirm.com                   Mr. Derek Y. Brandt
jconroy@simmonsfirm.com                  Brandt Law LLC
abierstein@simmonsfirm.com               P.O. Box 487
                                         Edwardsville, Illinois 62025
                                         Telephone:  (618) 307-6116
                                         derek@brandtlawllc.com

*Attorneys for Plaintiffs and Putative Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 16th day of June, 2017, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

Beth A. Bauer
Larry E. Hepler
David Bays
**HeplerBroom LLC**
service@heplerbroom.com

*Attorneys for ConocoPhillips Company, WRB Refining LP, ConocoPhillips WRB Partner LLC and Cenovus GPco LLC*

Richard B. Korn
Bart C. Sullivan
Ryan E. Mohr
**Fox Galvin, LLC**
RKorn@foxgalvin.com
bsullivan@foxgalvin.com
rmohr@foxgalvin.com

Amy Eikel
Tracie Renfroe
**King & Spalding LLP**
aeikel@kslaw.com
trenfroe@kslaw.com

*Attorneys for Defendant Shell Oil Company and Equilon Enterprises, LLC, d/b/a Shell Oil Products*

Julia Romano
Alexander Calfo
**King & Spalding LLP**
jromano@kslaw.com
acalfo@kslaw.com

*/s/ Jo Anna Pollock*